**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SEMICONDUCTOR ENERGY
LABORATORY CO, LTD.,

       Plaintiff,

   v.

YUJIRO NAGATA,

       Defendant.

_____/

No. C 11-02793 CRB

**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR SANCTIONS**

    In this case, Plaintiff Semiconductor Energy Laboratory Co., Ltd., a Japanese company, sues Defendant Yujiro Nagata, a Japanese scientist, alleging that when he recently repudiated an assignment of one of Plaintiff's patents, he did so in violation of the assignor estoppel doctrine, in breach of his contract, and tortiously. See generally FAC (dkt. 29). Defendant moves to dismiss, arguing that there is no federal cause of action based on violation of the assignor estoppel doctrine, and that the remaining state law claims constitute a SLAPP suit (or, in the alternative, support the imposition of sanctions under Federal Rule of Civil Procedure 11). See generally MTD (dkt. 31); Mot. for Sanctions (dkt. 36). As explained below, the Court concludes that the FAC does not allege a federal cause of action, and the Court does not reach the state court causes of action. The Court further denies the Motion for Sanctions, as Plaintiff's suit is not frivolous.

**United States District Court**
For the Northern District of California

## I.      BACKGROUND[1]

Plaintiff is a Japanese corporation that owns many U.S. and foreign patents relating to semiconductors.  FAC ¶ 11.  It was founded by Dr. Shunpei Yamazaki, one of the world's most prolific inventors.  Id. ¶ 12.  Defendant and Dr. Yamazaki are co-inventors on seven patents.  Id. ¶ 13.  Of those, the principal patent at issue is the '463 Patent.  Id. ¶ 14.

There is no dispute that Defendant originally signed all necessary Declarations and/or Assignments related to U.S. patent applications in the chain of priority of the '463 Patent.  Id. ¶ 27.  One of the applications in the chain of priority for the '463 Patent at issue is U.S. Patent application '437.  Id. ¶ 30.  In 1991, it became necessary to obtain Defendant's signature on an additional Declaration and Assignments that related to the '102 Application, which gave rise to the '334 Patent and to which the '437 Application claimed priority.  Id. ¶ 33.  Dr. Yamazaki specifically recalls observing Defendant sign the declaration and assignment in September 1991, and speaking with Defendant about why his signature had changed.  Id. ¶¶ 34-35.  It again became necessary to get Defendant's signature on a substitute assignment in December 1991, and again Dr. Yamazaki specifically recalls obtaining Defendant's signature.  Id. ¶ 36.

In June 2002, Plaintiff filed a patent infringement lawsuit in the United States, and Defendant cooperated with Plaintiff in providing information about one of the patents at issue; in appreciation, Plaintiff paid him about $76,000 in February 2004.  Id. ¶¶ 38-39.  As of March 2004, Defendant began a series of communications with Plaintiff and Dr. Yamazaki in which he demanded additional compensation relating to patents on which he was an inventor.  Id. ¶ 40.  Plaintiff refused his demands, and finally in 2008, Plaintiff's counsel asked Defendant to halt his disruptive contacts.  Id. ¶¶ 40-41.

In January 2009, Plaintiff filed a patent infringement lawsuit against Samsung in the Western District of Wisconsin.  Id. ¶ 42.  Because that lawsuit involved patents, including the '463 patent, on which Defendant was a named inventor, Plaintiff met and communicated with Defendant in October 2009, and assumed that Defendant would cooperate as he had in

---

[1] This Order accepts as true all non-conclusory facts alleged in the FAC.

**United States District Court**
For the Northern District of California

1 the earlier case. Id. ¶ 43. Instead of cooperating with Plaintiff, however, Defendant agreed

2 to assist Samsung in the litigation, "not as a fact witness but as a paid consultant for the U.S.

3 law firm defending Samsung." Id. ¶ 44. Defendant repudiated his signature on the 1991

4 Declaration and Assignments; his "repudiation came to [Plaintiff]'s attention in part by

5 means of declarations signed by [Defendant] and filed with the U.S. District Court in

6 Wisconsin." Id. ¶ 45. Plaintiff later learned that Defendant was to receive $52,500 from

7 Samsung, regardless of the hours he worked, with additional compensation at the rate of

8 $350 an hour. Id. ¶ 46.

9      In the Samsung litigation, Samsung asserted that Defendant's repudiation of the

10 signatures constituted evidence of forgeries which rendered the relevant patents, including

11 the '463 patent, unenforceable due to inequitable conduct. Id. ¶ 49. In May 2010, the court

12 declined to grant relief based on Samsung's inequitable conduct allegations, and the litigation

13 subsequently settled. Id. ¶ 53. Nonetheless, Plaintiff alleges that Defendant's conduct

14 caused it serious injury by, among other things, casting a cloud on the ownership,

15 enforceability, and validity of Plaintiff's patent family, causing Plaintiff to settle its claims

16 against Samsung for less money than it would have otherwise, and impairing future

17 enforcement of the '463 patent. Id. ¶¶ 55-58.

18      Plaintiff filed suit against Defendant in June 2011. See Compl. (dkt. 1). Defendant

19 brought a motion to dismiss, Plaintiff opposed, and Defendant replied. See dkts. 15, 17, 20.

20 Before that motion was heard, however, the Court held a CMC at which Defendant

21 questioned, for the first time, the Court's subject matter jurisdiction. See Opp'n (dkt. 32) at

22 8-9. The Court then permitted Plaintiff to amend its complaint to supplements its allegations

23 related to federal question jurisdiction. Id. at 9. The FAC, filed October 2011, now includes

24 five causes of action, (1) "Declaratory Judgment – Violation of Federal Patent Law;" (2)

25 "Declaratory Judgment – Anticipatory Breach of Contract;" (3) Slander of Title; (4) Quiet

26 Title; (5) Unjust Enrichment. See generally FAC. Defendant again moves to dismiss. See

27 generally MTD.

28 //

**United States District Court**
For the Northern District of California

1 **II.   LEGAL STANDARD**

2      Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an

3 action for lack of subject matter jurisdiction.  Though the defendant makes the motion, the

4 plaintiff bears the burden of establishing subject matter jurisdiction.  See Kokkonen v.

5 Guardian Life Ins. Co. of Am., 511 U.S. 375 (1994); Stock W., Inc. v. Confederated Tribes

6 of the Colville Reservation, 873 F.2d 1221, 1225 (9th Cir. 1989).  A Rule 12(b)(1)

7 jurisdictional attack may be facial or factual.  See Safe Air for Everyone v. Meyer, 373 F.3d

8 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations

9 contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Id.  In

10 resolving a facial attack, a motion will be granted if the complaint, when considered in its

11 entirety, on its face fails to allege facts sufficient to establish subject matter jurisdiction.  See,

12 e.g., Savage v. Glendale Union High School, 343 F.3d 1036, 1040 n.2 (9th Cir. 2003).[2]

13 **III.   DISCUSSION**

14      **A.   Subject Matter Jurisdiction**

15      The FAC alleges that the Court has subject matter jurisdiction under 28 U.S.C. §

16 1338(a), as a civil action arising under any Act of Congress relating to patents.  FAC ¶ 4.

17 Courts use the "well-pleaded complaint rule" to determine whether a case raises a federal

18 question; the rule provides that "federal jurisdiction exists only when a federal question is

19 presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar Inc. v.

20 Williams, 482 U.S. 386, 392 (1987).  The issue in this case is whether the FAC truly presents

21 a federal question on its face.

22      **1.   Assignor Estoppel as a Cause of Action**

23      The FAC's only federal cause of action, "Declaratory Judgment – Violation of Federal

24 Patent Law," cites no particular federal law.  See MTD at 5.  Instead, it alleges that "Federal

25 law bars an assignor of a U.S. Patent from conduct that attacks the U.S. Patent subject to that

26 assignment on grounds of invalidity or inequitable conduct."  FAC ¶ 65.  It further alleges

27

28      [2] Defendant also moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), but the Court
does not reach that basis for dismissal.

1   that Defendant signed the assignments and declarations at issue in 1991, and that he

2   "intentionally relinquished any right to attack the enforceability of the patents subject to his

3   assignment by virtue of Federal patent law estopping such attacks."   Id. ¶ 66.  And it alleges

4   that relief from Defendant's wrongful conduct "necessarily depends on the resolution of one

5   or more substantial questions of Federal patent law, resolution of which is essential to each

6   of the claims herein."   Id. ¶ 72.  The cause of action makes multiple references to "Federal

7   patent law" generally.   See, e.g., id. ¶¶ 73, 75.

8        Defendant argues that such allegations demonstrate that the Court lacks subject matter

9   jurisdiction.  See MTD at 5-9.  He argues, "Simply put, there is no 'Federal law' giving rise

10  to an affirmative claim that 'bars' an assignor from 'conduct' that attacks the validity or

11  enforceability of a patent that he has assigned.  Rather, there is a federal doctrine in patent

12  law that legally estops a party-inventor from asserting a claim for invalidity or

13  unenforceability of a patent."   Id. at 6.  Indeed, Plaintiff's subsequent filings confirm that it is

14  bringing suit under the "assignor estoppel" doctrine.  See, e.g., Opp'n (dkt. 32) at 15 ("the

15  application of the assignor estoppel doctrine is a federal question").

16       "Assignor estoppel is an equitable doctrine that prevents one who has assigned the

17  rights to a patent . . . from later contending that what was assigned was a nullity.  The

18  estoppel also operates to bar other parties in privity with the assignor, such as a corporation

19  founded by the assignor."   Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224

20  (Fed. Cir. 1988).  Diamond Scientific was the Federal Circuit's "first opportunity" to

21  examine the assignor estoppel doctrine: the case involved an assignor who, after assigning

22  his rights in various patents and leaving his employer, formed his own company, which his

23  employer accused of infringing three of the assigned patents.  Id. at 1222.  The assignor

24  sought to "defend against accusations of infringement by trying to show that the three patents

25  in issue are invalid because the inventions either were inadequately disclosed by the

26  specifications, lacked novelty, or could have been obvious to one of ordinary skill at the time

27  the inventions were made."   Id. at 1225.  The Federal Circuit found that such a defense was

28  barred by the assignor estoppel doctrine because it would be unfair for the assignor to profit

**United States District Court**
For the Northern District of California

1    both from his initial assignment and also by his later attack on the value of what he assigned.

2    <u>Id.</u>

3         Defendant here argues that the assignor estoppel doctrine is a defense, not the basis

4    for an affirmative cause of action.  <u>See</u> MTD at 6 (citing Fed. R. Civ. P. 8(c) (estoppel is

5    affirmative defense); <u>Cont'l Airlines Inc. v. Intra Brokers, Inc.</u>, 24 F.3d 1099, 1103 (9th Cir.

6    1994) ("Estoppel is an affirmative defense")).  Plaintiff insists that "[t]he assignor estoppel

7    doctrine is not merely a defense," Opp'n at 10, but the best argument it can muster is that

8    Defendant's cases pertain to garden variety estoppel, not assignor estoppel, <u>id.</u> at 10 n.3.

9         But even assignor estoppel is still a kind of estoppel.  <u>See</u> <u>Diamond Scientific Co.</u>,

10   848 F.2d at 1225 (explaining that "The Supreme Court . . . has explicitly recognized assignor

11   estoppel to be the functional equivalent of estoppel by deed") (citing <u>Westinghouse Elec. &</u>

12   <u>Mfg. Co. v. Formica Insulation Co.</u>, 266 U.S. 342, 348-49 (1924)); <u>see also</u> <u>Briggs & Riley</u>

13   <u>Travelware, LLC v. Paragon Luggage, Inc.</u>, 324 F. Supp. 2d 395, 401 (S.D. N.Y. 2003)

14   ("<u>Like other estoppel doctrines, such as collateral estoppel, judicial estoppel, or promissory</u>

15   <u>estoppel</u>, assignor estoppel . . . . <u>like many other estoppel rules</u>, assignor estoppel is based on

16   the equitable principle that a party may not change position after another party has relied on

17   that position to its detriment.") (emphasis added).

18        Although it is not entirely unheard of for estoppel to be the basis for a cause of action,

19   <u>see, e.g.</u>, <u>Clark v. Kellogg Co.</u>, 205 F.3d 1079, 1083 (8th Cir. 2000) (under Nebraska law,

20   promissory estoppel may be asserted as the basis for a cause of action), it simply makes no

21   sense to use a doctrine intended to "estop [a] party from advancing a particular claim or

22   defense" in a legal case, <u>see</u> <u>Briggs & Riley Travelware</u>, 324 F. Supp. 2d at 401, as a way to

23   sue a non-party who has made no claim or defense in a legal case (see privity discussion

24   below).  <u>See also</u> <u>Checkpoint Sys., Inc. v. All-Tag Sec. S.A.</u>, 412 F.3d 1331, 1336 (Fed. Cir.

25   2005) ("assignor estoppel prevents a party that assigns a patent to another from later

26   challenging the validity of the assigned patent.") (emphasis added).

27        Perhaps the best support for Defendant's argument that an "assignor estoppel" cause

28   of action does not exist is that Plaintiff did not cite in its briefing <u>even a single case</u>

6

**United States District Court**
For the Northern District of California

1    recognizing such a cause of action.  At the motion hearing, Plaintiff's counsel conceded that

2    it had still not found one.  Nor has the Court.  Instead, the typical assignor estoppel case

3    involves an assignor being sued for infringement and trying to defend himself by arguing the

4    patent's invalidity, something the doctrine prevents.  See, e.g., Diamond Scientific, 848 F.2d

5    at 1225, Dane Indus., Inc. v. Ameritek Indus., Inc., 154 Fed. Appx. 894, 899 (2005).[3]

6           This Court declines Plaintiff's invitation to be the first to recognize a cause of action

7    under the assignor estoppel doctrine.

### 2.      Applicability of the Doctrine Here

9           There are two additional reasons why the assignor estoppel cause of action alleged in

10   the FAC would not apply here, even if it existed.

### a.      Requirement of Privity

12          First, assignor estoppel only applies when the assignor is a party, or in privity with a

13   party.  See Synopsys, Inc. v. Magma Design Automation, No. 04-3923, 2005 WL 1562779,

14   at *7 (N.D. Cal. July 1, 2005).  Thus, in Briggs & Riley Travelware, 324 F. Supp. 2d at 400,

15   the plaintiff argued that the doctrine precluded the defendant, an alleged infringer, from using

16   the inventor/assignor's testimony to establish the invalidity of the patent.  The Southern

17   District of New York held that, although the assignor estoppel doctrine estops an assignor

18   from attacking the validity of a patent as against anyone claiming the right under the

19   assignment, or any party in privity with the assignor, the doctrine does not bar the testimony

20   of the assignor who testifies as a non-party witness against the validity of the patent.  The

21   court explained that "[t]here is no equity . . . in denying a party which is not so estopped

22   from presenting any competent evidence that can aid a factfinder in determining the merits of

23   its defense."  Id.  It continued, "Assignor estoppel operates against the inventor/assignor; it

24   cannot unfairly hamstring a party which never obtained, held or assigned the patent from

25

26          [3] Defendant makes the additional argument that recognizing such a cause of action would have
     disastrous effects on the administration of justice: "It is one thing for the Federal courts to estop a party
27   from asserting, via affirmative claim, that which he has transferred for value has no value.  It is quite
     another for the Federal courts to rule that inventors may never provide percipient testimony that would
28   harm an assigned patent."  MTD at 8.  This is a persuasive policy argument and it is consistent with
     Briggs & Riley Travelware, 324 F. Supp. 2d at 400, discussed below.

**United States District Court**
For the Northern District of California

1   proving its case, by declaring incompetent the testimony of a witness who may have valuable

2   testimony to offer." Id.  And it concluded that while the assignor's testimony would be

3   "subject to vigorous attack," it would be for the factfinder to decide whether his testimony

4   was credible; "[n]o estoppel, however, prevents [the alleged infringer] from calling him as a

5   witness." Id. at 402.

6          Relatedly, the Federal Circuit in Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 412 F.3d

7   1331, 1337 (Fed. Cir. 2005) rejected the argument that an alleged infringer could not use

8   inventor testimony to challenge the validity of a patent, and held: "a party that is not barred

9   by assignor estoppel from challenging the validity of the patent, should be able to at least

10  proffer all otherwise admissible evidence in support of its case."[4] See also Verizon Servs.

11  Corp. v. Cox Fibernet Va., Inc., 602 F.3d 1325, 1339-40 (Fed. Cir. 2010) (not error for

12  district court to allow inventors to testify about the patents they invented; declining to

13  address argument that assignor estoppel barred such testimony); Earth Resources Corp. v.

14  United States, 44 Fed. Cl. 274, 287-88 (1999) (inventor/assignor not estopped from testifying

15  as non-party witness as to the patent's validity where there was no privity with party

16  asserting invalidity claim).

17         The FAC alleges that Defendant is in privity with Samsung. See FAC ¶ 68

18  ("[Defendant] undertook his repudiation for his own personal financial gain in conjunction

19  with an accused infringer, Samsung, and/or Samsung's agents and representatives, with

20  whom [Defendant] was in privity and who stood in a position to benefit substantially from

21  [Defendant's] repudiation in violation of Federal patent law.").  If true, the assignor estoppel

22  doctrine would apply. See Synopsys, 2005 WL 1562779, at *7.  But the FAC's allegation

23  that Defendant and Samsung are in privity is not controlling. See Iqbal, 129 S. Ct. at 1950

24  (court "not bound to accept as true a legal conclusion couched as a factual allegation").  The

25  Court must therefore undertake its own analysis of whether privity exists.

26

27         [4] Defendant argues, persuasively, that "[i]t would be perverse indeed for the Federal courts to
    rule, on the one hand, that the assignor estoppel doctrine does not prohibit non-party inventor testimony
28  in support of invalidity, yet rule, on the other hand, that the assignor estoppel doctrine gives rise to a
    cause of action for providing the very testimony that it does not prohibit." Reply at 4.

**United States District Court**
For the Northern District of California

1    As Judge Chesney held in <u>Synopsys</u>, in undertaking such an analysis, "the Court must

2  evaluate 'all direct and indirect contacts,'" and "evaluate the relationship between the

3  inventor/assignor and the entity 'in light of the act of infringement.'"  2005 WL 1562779, at

4  *4 (citing <u>Mentor Graphics Corp. v. Quicktum Design Sys., Inc.</u>, 150 F.3d 1374, 1379 (Fed.

5  Cir. 1998); and <u>Shamrock Techs. v. Med. Sterilization</u>, 903 F.2d 789, 793 (Fed. Cir. 1990)).

6  "Privity, like the doctrine of assignor estoppel itself, is determined upon a balance of the

7  equities . . . The closer that relationship [between an inventor and the other entity], the more

8  the equities will favor applying the doctrine."  <u>Earth Resources Corp.</u>, 44 Fed. Cl. at 284.

9    Here, Plaintiff points to a single contact between Defendant and Samsung in order to

10 establish privity: "having failed to extract unwarranted additional compensation from

11 [Plaintiff], [Defendant] maliciously contracted himself to an accused infringer at an

12 exorbitant fee to repudiate his assignments contrary to federal law, thereby assisting the

13 infringer in perpetuating its infringement."  Opp'n at 12 n.4.  Indeed, the FAC alleges that

14 Defendant was to receive $52,500 from Samsung, regardless of the hours he worked, with

15 additional compensation at the rate of $350 an hour.  FAC ¶ 46.

16    The payment from Samsung is insufficient to establish privity.  "What is significant is

17 whether the ultimate infringer availed itself of the inventor's 'knowledge and assistance' to

18 conduct infringement."  <u>Intel Corp. v. U.S. Int'l Trade Comm'n</u>, 946 F.2d 821, 839 (Fed. Cir.

19 1001) (quoting <u>Shamrock Tech., Inc.</u> 903 F.2d at 794).  Here, nothing in the FAC suggests

20 that Defendant helped Samsung to infringe; the alleged infringement appears to have already

21 happened at the time Defendant got involved.  The acts of Defendant's that are complained

22 of in the FAC involve the litigation, not the infringement itself.  <u>See, e.g.</u>, FAC ¶ 44

23 (Defendant agreed to assist Samsung in the litigation); ¶ 45 (Defendant's "repudiation came

24 to [Plaintiff]'s attention in part by means of declarations signed by [Defendant] and filed with

25 the U.S. District Court in Wisconsin."); <u>Briggs & Riley Travelware</u>, 324 F. Supp. 2d at 402

26 n.7 ("Paragon manufactured the allegedly infringing suitcases without any assistance from

27 Nykoluk.  Indeed, it appears that Nykoluk only came in contact with Paragon as a result of

28 this lawsuit.").  <u>Compare</u> <u>Synopsys</u>, 2005 WL 1562779, at *8 (privity established where "van

9

1    Ginneken then left Synopsys to work for Magma, where he had a key role in developing at

2    least four Magma products that are alleged to infringe the '114 patent, and at least some role

3    in developing the allegedly infringing portions of the products.").

4        Moreover, although there is a financial relationship between Defendant and Samsung,

5    it is a relatively limited one.  The court in Earth Resources Corp., 44 Fed. Cl. at 284-87,

6    undertook a thorough study of the three leading cases in the Federal Circuit on the issue of

7    privity,[5] and concluded that such cases "involve very close financial relationships in which

8    the actual assignor almost envelopes the other entity," and discussed "a degree of financial

9    interconnectedness such as one entity having financial control over the other."  If even

10   "employment is insufficient to establish privity," Dane Indus., Inc. v. Ameritek Indus., LLC,

11   154 Fed. Appx. 894, 899 (2005), it is hard to see how a $52,000 contract is sufficient.

12       Although the financial arrangement between Defendant and Samsung is arguably

13   troublesome, it should have been raised in a cross-examination, as a basis for challenging

14   Defendant's credibility.  As Defendant was not in privity with Samsung, the assignor

15   estoppel doctrine should not bar his testimony, let alone give rise to an independent cause of

16   action against him.

17                    **b.      Requirement that the Conduct Challenge the Validity of the
                              Patent Itself**

18

19       Second, in University of West Virginia Board of Trustees v. VanHoorhies, 278 F.3d

20   1288, 1301 (Fed. Cir. 2002), the Federal Circuit held that "While the doctrine precludes

     challenges to the validity of a patent itself, . . . it does not preclude challenges to the validity
21
     of a contract assigning the patent."  See also 5 Annotated Patent Digest § 35:18 ("assignor
22
     estoppel does not prohibit the assignor from challenging the legality of the actual
23
     assignment").  Here, the conduct at issue in the FAC is Defendant's having repudiated his
24
     signature on the assignment.  See FAC ¶ 45.  That is not a challenge to the validity of the
25
     patent itself, but to the contract assigning the patent, something Univ. of W. Va. Bd. of
26
     Trustees, 278 F.3d at 1301, allows.  When the Court raised this point with Plaintiff's counsel
27

28        [5] These are Mentor Graphics, 150 F.3d 1374, Intel Corp., 946 F.2d 821, and Shamrock Techs.,
     903 F.2d 789.  Id.

1   at the motion hearing, counsel merely relied on Judge Newman's concurrence in <u>Diamond</u>

2   <u>Scientific Co.</u>, 848 F.2d at 1227-28.  The Court finds such concurrence inapposite.

3                         **3.      The Artful Pleading Rule**

4           Plaintiff contends in the alternative that the Court has jurisdiction under the artful

5   pleading doctrine.  <u>See</u> Opp'n at 13-15.  That doctrine states that a case arises under federal

6   law if federal law creates the cause of action or if plaintiff's right to relief necessarily

7   depends on resolution of a substantial question of federal law.  <u>See</u> <u>Grable & Sons Metal</u>

8   <u>Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314 (2005) (citing <u>Smith v. Kan. City</u>

9   <u>Title & Trust Co.</u>, 255 U.S. 180 (1921)).  Thus, in <u>Additive Controls & Measurement Sys.,</u>

10  <u>Inc. v. Flowdata, Inc.</u>, 986 F. 2d 476, 478 (Fed. Cir. 1993), where the plaintiff brought a

11  Texas state law claim for business disparagement, and the disparaging statement was that the

12  plaintiff infringed on a patent, plaintiff's right to relief necessarily depended on a substantial

13  question of patent law (whether there was patent infringement).  Accordingly, 28 U.S.C. §

14  1338 gave the district court jurisdiction over the case.  <u>Id.</u>  Referencing <u>Additive Controls</u>,

15  Plaintiff argues that "the application of the assignor estoppel doctrine is a federal question"

16  and that it is "central to each of the Counts in the Complaint."  Opp'n at 15.  This is incorrect

17  for two reasons.

18          First, as just discussed, the assignor estoppel doctrine does not apply to the facts here,

19  and so it cannot be "central to each of the Counts."  <u>See</u> <u>id.</u>

20          Second, a claim supported by alternative theories is not sufficient for federal question

21  jurisdiction unless federal (patent) law is essential to each of those theories.  <u>See</u> <u>Christianson</u>

22  <u>v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 810 (1988).  The other counts are supported by

23  alternate state law theories.

24          Accordingly, artful pleading of the state law claims does not give rise to subject

25  matter jurisdiction.  As there is no subject matter jurisdiction, the Court dismisses the sole

26

27

28

1  federal cause of action with prejudice,[6] and declines to exercise supplemental jurisdiction

2  over the remaining state law claims.

3  **B.    Sanctions**

4  Defendant also moves for sanctions under Federal Rule of Civil Procedure 11.  See

5  generally Mot. for Sanctions ("This motion is being brought because the Court has by now

6  presumably dismissed [Plaintiff]'s claims in such a manner as to not award attorney's fees

7  and costs under California's anti-SLAPP statute.  Even if monies are not awarded pursuant to

8  that statute, however, this Court has the power to award such costs and fees under Rule 11").

9  Rule 11 provides that, by presenting a pleading to the court, an attorney represents that:

> to the best of the person's knowledge . . . :
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> (3) the factual contentions have evidentiary support . . .

Fed. R. Civ. P. 11(b).  If Rule 11(b) has been violated, the court may impose an appropriate

sanction on the attorney, law firm or party responsible for the violation.  Fed. R. Civ. P.

11(c).

Defendant contends that the original complaint and the FAC "comprised nothing more

than legally unwarranted claims," and that Plaintiff "was fully aware that its claims could not

be sustained at least as early as [Defendant's] briefing on his first motion to dismiss."  Mot.

for Sanctions at 3.  Defendant argues that he spent "significant time and money defending

himself against" such claims, and that "at the very least, [Plaintiff] wished to inconvenience

[Defendant] financially and otherwise by bringing him before a court in a foreign country to

defend himself against meritless claims."  Id.

But complaints that initiate cases are not filed for an improper purpose if they are non-

frivolous.  See Townsend v. Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990)

---

[6] Plaintiff has already amended once, and the Court finds that any further amendment would be futile.  See Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir. 1995) ("Futility of amendment can, by itself, justify the denial of a motion for leave to amend.").

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   (en banc).  Regardless of a plaintiff's motives for filing a complaint, Rule 11 will not apply

2   to a non-frivolous complaint because "the bringing of meritorious lawsuits by private

3   individuals is one way that public policies are advanced."  Id.  Whether a complaint is

4   frivolous is objective.  See In re Keegan Mgmt. Co., 78 F.3d 431, 434 (9th Cir. 1996).

5   Moreover, Rule 11 "is not intended to chill an attorney's enthusiasm or creativity in pursuing

6   federal or legal theories."  Advisory Notes to the Fed. R. Civ. P. 11 1982 amendment.  See

7   also BE&K Constr. Co. v. NLRB, 536 U.S. 516, 532 (2002) ("Even unsuccessful but

8   reasonably based suits advance some First Amendment interests.  Like successful suits,

9   unsuccessful suits allow the public airing of disputed facts.").

10          Here, although the Court concludes that the FAC should be dismissed – because the

11   sole federal claim is defective – the Court also recognizes that there was little relevant

12   authority on that question.  Moreover, although Defendant argued in its first Motion to

13   Dismiss that the case was a SLAPP suit, see generally dkt. 16, it did not argue until the CMC

14   hearing that the Court lacked subject matter jurisdiction over the case, see Opp'n to Mot. for

15   Sanctions (dkt. 40) at 12.  Plaintiff was therefore not objectively unreasonable in continuing

16   to assert in the FAC that the assignor estoppel doctrine could support an affirmative federal

17   cause of action.  Plaintiff's position appears to the Court to be a "nonfrivolous argument for

18   extending, modifying, or reversing existing law or for establishing new law," see Fed. R.

19   Civ. P. 11(b)(2), albeit an argument the Court rejects.

20          Accordingly, the Court denies the Motion for Sanctions.

21   **IV.     CONCLUSION**

22          For the foregoing reasons, the Court GRANTS the Motion to Dismiss and DENIES

23   the Motion for Sanctions.

24          **IT IS SO ORDERED.**

25

26   Dated: January 23, 2012                              CHARLES  R. BREYER
                                                          UNITED STATES DISTRICT JUDGE
27

28

G:\CRBALL\2011\2793\order re MTD, sanctions.wpd          13